FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **COALITION FOR GOOD GOVERNANCE, et al.,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**BRAD RAFFENSPERGER, et al.,**<br><br>    **Defendants.** | Civil Action No. 1:20-cv- 01677 -TCB |

**PLAINTIFFS' RESPONSE TO STATEMENT OF INTEREST
FILED BY THE UNITED STATES UNDER UOCAVA**

Plaintiffs welcome the statement of interest filed by the United States (Doc. 24), in which the government requests that, "if the Court decides to modify Georgia's primary election schedule, it ensures that the schedule would allow the State to transmit absentee ballots to military and overseas voters who timely request them at least 45 days before any election for federal office, as UOCAVA requires." (Id., at 2–3.) Plaintiffs file this Response to address the government's concern, which Plaintiffs share, that any new primary election schedule must account for UOCAVA's 45-day mailing requirement. As explained below, the postponement that Plaintiffs have requested—moving the primary to June 30—permits two different ways for the 45-day requirement to be met in any runoff.

I.  **Plaintiffs Agree that the 45-Day Mailing Requirement Applies to Any Potential Runoff Election**

As an initial matter, the Plaintiffs agree with the government's position that UOCAVA, as amended by the MOVE Act, requires States to transmit validly requested ballots to UOCAVA voters at least 45 days before any election for federal office when the ballot request is received by that mailing deadline. 52 U.S.C. § 20302(a)(8)(A). The government is correct that the Eleventh Circuit has interpreted the 45-day mailing requirement to apply to federal runoff elections. *United States v. Alabama*, 778 F.3d 926, 928 (11th Cir. 2015); *see also United States v. Georgia*, 778 F.3d 1202, 1204 n.1 (11th Cir. 2015).

Thus Plaintiffs agree that, if the upcoming primary election date is moved later than June 9, then whatever date the primary is postponed to must still allow enough time both for UOCAVA runoff ballots to be mailed 45 days in advance of any potential runoff election and for UOCAVA general election ballots thereafter to be mailed 45 days in advance of the eventual general election set for Tuesday, November 3, 2020.[1] As explained in Sections II and III below, a revised June 30 primary election date permits both UOCAVA mailing deadlines to be met.

---

[1] UOCAVA permits the 45-day requirement to be waived if a State requests a waiver at least 90 days in advance of the election due to an "undue hardship," which the statute defines to include delays caused by, among other things, "delay . . . due to a legal contest." 52 U.S.C. § 20302(g)(1) & (2)(B)

**II.    Georgia Law Governing Relevant Election Deadlines**

The following provisions of Georgia law provide deadlines that are relevant to the scheduling of elections and runoffs for federal offices:

- O.C.G.A. § 21–2–493(k) sets the county superintendents' deadline for certifying election results to the Secretary as the <u>tenth</u> day after election day.

- O.C.G.A. § 21–2–499(b) sets the Secretary's deadline for certifying state election results as the <u>seventeenth</u> day after election day.

- O.C.G.A. § 21–2–501(a)(3) and (a)(5) set the dates for federal runoff elections as the Tuesday of the ninth week after election day, which is always the <u>sixty-third</u> day after election day.

These statutes collectively mandate that any runoff in Georgia will always happen at least 46 days after the deadline for the Secretary to certify state results in elections for federal offices. If the certified results require a runoff and certification happened on day seventeen after an election, then the runoff ballot can still be finalized and transmitted to UOCAVA voters the next day, which is the eighteenth day after the election. The eighteenth day after an election will always be forty-five days earlier than the date of any runoff, which is required to be held on the sixty-third day after the election. Thus O.C.G.A. § 21–2–501(a)(3) and (a)(5) ensure that

UOCAVA's 45-day mailing requirement can always be satisfied. This is why the Eleventh Circuit recognized that the adoption of O.C.G.A. § 21–2–501(a)(3) and (a)(5) mooted Georgia's challenge to the UOCAVA mailing requirement in *Georgia*, 778 F.3d at 1204.

The General Assembly's decision to allow the Secretary as little as a single day to finalize the runoff ballot reflects the practical reality that accomplishing this work in just one day is eminently feasible even in a large statewide election because (1) there simply are not many UOCAVA ballots even in high turnout elections;[2] and (2) the transmission of UOCAVA ballots is generally performed by county superintendents, each of whom only needs to process a subset of the whole number of UOCAVA ballots. The majority of UOCAVA ballots are transmitted by email, making the physical mailing a manageable task.

In this case, the Secretary's own schedule demonstrates the feasibility of allowing a single day to finalize and transmit UOCAVA ballots:

---

[2] For example, in the 2016 general election, which featured Donald Trump versus Hillary Clinton, all counties in Georgia together only transmitted 18,634 UOCAVA ballots (8,218 to service members; 10,416 to overseas civilians.) *See* U.S. Election Assistance Commission, *The Election Administration and Voting Survey: 2016 Comprehensive Report*, at 129 (2016) (available at https://www.eac.gov/sites/default/files/eac_assets/1/6/2016_EAVS_Comprehensive_Report.pdf) (last visited May 13, 2020).

| Secretary's Current Primary Election Schedule—June 9 Primary | | |
|---|---|---|
| Primary Election Day | $= D_{primary}$ | June 9, 2020 |
| Secretary's Primary Certification (finalizes runoff ballot) | $= D_{primary} +17$ days[3] | June 26, 2020 |
| UOCAVA Runoff Mailing Deadline | $= D_{runoff} -45$ days[4] | June 27, 2020 |
| Runoff Election Day | $= D_{primary} +63$ days[5] $= D_{runoff}$ | Aug. 11, 2020 |

As the above schedule indicates, the Secretary's current schedule only gives a single day—from June 26 to June 27—between the Secretary's certification of the primary election results and the deadline for UOCAVA primary runoff ballots to be transmitted. Plainly the Secretary believes this task can be accomplished in the timeframe that he has established for himself in his own preferred schedule.

The Secretary's schedule comfortably accommodates UOCAVA's mailing deadline for the November general election as follows:

| Secretary's Current Primary Runoff Schedule and the General Election | | |
|---|---|---|
| Runoff Election Day | $= D_{runoff}$ | Aug. 11, 2020 |
| Secretary's Runoff Certification (finalizes the general election ballot) | $= D_{runoff} +17$ days | Aug. 28, 2020 |
| UOCAVA General Mailing Deadline | $= D_{general} -45$ days | Sept. 19, 2020 |
| General Election Day | $= D_{general}$ | Nov. 3, 2020 |

---

[3] *See* O.C.G.A. § 21–2–499(b).
[4] *See* 52 U.S.C. § 20302(a)(8)(A).
[5] *See* O.C.G.A. § 21–2–501(a)(3) and (a)(5).

### III. Moving the Primary to June 30 Will Allow 45 Days to Mail UOCAVA Runoff Ballots Even If the Secretary Resets the Runoff Date by a Corresponding Amount Pursuant to O.C.G.A. § 21–2–501(a)(3) & (5)

If the Court orders the primary election date to be moved from June 9 to June 30, the Secretary may reset the runoff date to 63 days later to conform the runoff date to the requirements of O.C.G.A. § 21–2–501(a)(3) and (a)(5). If the Secretary moves the runoff date in this manner, then the runoff will be later and UOCAVA ballots can be sent 45 days prior to the new runoff, just as can be done under the Secretary's current schedule.[6]

| **Plaintiffs' Proposed Primary Election Schedule—June 30 Primary** | | |
|---|---|---|
| Primary Election Day | $= D_{primary}$ | June 30, 2020 |
| Secretary's Primary Certification (finalizes runoff ballot) | $= D_{primary} + 17$ days | July 17, 2020 |
| Runoff Election Day (if moved by the Secretary) | $= D_{primary} + 63$ days $= D_{runoff}$ | Sept. 1, 2020 |
| UOCAVA Runoff Mailing Deadline | $= D_{runoff} - 45$ days | July 18, 2020 |

The June 30 date works if the Secretary moves the runoff election because, just as does the Secretary's current schedule (built around a June 9 primary), so too does the Plaintiffs' proposed June 30 primary schedule also provide one day—

---

[6] The scenario in which the Secretary does *not* move the runoff date until 63 days after June 30 is discussed in Section IV below.

from July 17 to July 18—between certification of the primary election results and the 45-day deadline for UOCAVA primary runoff ballots to be transmitted.

In addition, like the Secretary's June 9 primary calendar, the Plaintiffs' proposed June 30 calendar will still also accommodate a 45-day UOCAVA mailing deadline for the November general election, even if the Secretary moves the August 11th runoff to September 1st (i.e., closer to the general election):

| **Plaintiffs' Proposed Primary Runoff Schedule and the General Election** | | |
|---|---|---|
| Runoff Election Day (if moved) | = $D_{runoff}$ | Sept. 1, 2020 |
| Secretary's Runoff Certification (finalizes the general election ballot) | = $D_{runoff}$+17 days | Sept. 18, 2020 |
| UOCAVA General Mailing Deadline | = $D_{general}$ –45 days | Sept. 19, 2020 |
| General Election Day | = $D_{general}$ | Nov. 3, 2020 |

Here again, like the Secretary's June 9 primary schedule, the Plaintiff's proposed schedule (even if the Secretary moves the runoff date) still provides one day—from September 18 to September 19—between the Secretary's certification of the primary runoff election results and the deadline for transmitting UOCAVA general election ballots. While the Secretary may find it administratively preferable to have more than a day to finalize the general election UOCAVA ballots, he is not entitled to favor his own administrative convenience at the expense of Plaintiffs' and other voters' constitutional rights. *See Taylor v. Louisiana*, 419 U.S. 522, 535

(1975) ("administrative convenience" cannot justify the deprivation of a constitutional right).

In sum, the Plaintiffs' proposed June 30 primary date allows for the 45-day UOCAVA transmittal deadline to be met in both the primary and the general elections, even if the Secretary moves the August 11 runoff date to be 63 days after the new June 30 primary date that Plaintiffs are requesting. UOCAVA is not an obstacle to this piece of the relief sought by Plaintiffs.

### IV. Precedent Exists for Permitting Federal Elections and Runoffs to be Less Than 45 Days Apart, Even in Spite of UOCAVA

The reason why the government filed its statement of interest may have been because Plaintiffs' brief filed in support of injunctive relief states that, "a June 30 election . . . need not require postponing the scheduled August 11 runoff elections." (Doc. 20, at 14.) The government notes that, "postponing the primary election until June 30 without also adjusting the date of the primary runoff election would leave only 42 days between the elections, making it impossible for the State to transmit ballots 45 days before that runoff election date." (Doc. 24, at 8.)

Plaintiffs believe that O.C.G.A. § 21–2–501(a)(3) and (a)(5) probably require the Secretary to push the primary runoff date of August 11 back three weeks (to be 63 days later than new primary date) if the Court orders the primary to be moved from June 9 to June 30. As Section III above demonstrates, if the

Secretary *does* move the runoff date by an amount that corresponds to any court-ordered postponement of the primary to June 30, then the UOCAVA deadlines can still be comfortably met for both the runoff and the general elections.

But if the Secretary does *not* move the runoff date from August 11, the government s right that the calendar will then leave only 42 days between the primary and the runoff. But there is precedent that permits this court to fashion a solution. One such example is the Middle District of Alabama's 2013 order requiring a primary election to be conducted using an "instant runoff ballot" for UOCAVA voters, which (when faced with a 42-day period between elections) allowed UOCAVA voters to rank their potential runoff choices when voting in the primary, in order to ensure that they would not be disenfranchised in the runoff because the 45-day transmittal requirement could not be met. *See, e.g.*, *United States v. Alabama*, 2013 U.S. Dist. LEXIS 105006 (M.D. Ala. July 26, 2013) (Myron H. Thompson, J.) (ordering use of instant runoff ballot where UOCAVA's 45-day transmittal requirement could not be met due to primary and runoff elections being closer than 45 days apart).

The availability of such equitable solutions means that UOCAVA does not necessarily require the August 11 runoff date to be moved in order for this Court to be able to move the primary election date from June 9 to June 30. Under

emergency conditions, like the extraordinary circumstances of the present COVID-19 pandemic, this Court will ultimately be able to fashion appropriate equitable relief if the Secretary does not move the primary runoff date in accordance with O.C.G.A. § 21–2–501(a)(3) and (a)(5).

## V. Conclusion

The government's concerns about UOCAVA voters present no obstacle to this Court moving the primary from June 9 to June 30. If the Secretary moves the runoff date by a corresponding amount of time so that the runoff is 63 days after the new primary date of June 30, then the calendar will still permit UOCAVA ballots to be transmitted 45 days prior to the runoff and 45 days prior to the general election. If, however, the Secretary does not move the runoff date, leaving less than 45 days between the primary and the runoff, then precedent still exists for this Court (like Judge Thompson in the Middle District of Alabama) to equitably require some other form of protection for the voting rights of uniformed and overseas voters. To protect the Plaintiffs, as well as all Georgians, this Court should enjoin the Secretary from conducting the scheduled June 9 primary until June 30, as well as granting the other relief requested by the Plaintiffs.

Respectfully submitted this 13th day of May, 2020.

| | |
|---|---|
| */s/ Bruce P. Brown* | */s/ Robert A. McGuire, III* |
| Bruce P. Brown | Robert A. McGuire, III |
| Georgia Bar No. 064460 | *Admitted Pro Hac Vice* |
| BRUCE P. BROWN LAW LLC | ROBERT MCGUIRE LAW FIRM |
| 1123 Zonolite Rd. NE | 113 Cherry St. #86685 |
| Suite 6 | Seattle, Washington 98104-2205 |
| Atlanta, Georgia 30306 | (253) 267-8530 |
| (404) 881-0700 | |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

> */s/ Bruce P. Brown*
> Bruce P. Brown
> Georgia Bar No. 064460
> BRUCE P. BROWN LAW LLC
> Attorney for Plaintiffs
> 1123 Zonolite Rd. NE
> Suite 6
> Atlanta, Georgia 30306
> (404) 881-0700