IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE; RHONDA J. MARTIN; JEANNE DUFORT; AILEEN NAKAMURA; B. JOY WASSON; and ELIZABETH THROOP,<br><br>　　Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State of the State of Georgia; and REBECCA N. SULLIVAN, DAVID J. WORLEY, MATTHEW MASHBURN and AHN LE, in their official capacities as members of the Georgia State Election Board,<br><br>　　Defendants. | CIVIL ACTION FILE<br><br>NO. 1:20-cv-1677-TCB |

**O R D E R**

## I. Background

This case involves challenges to Georgia's upcoming June 9 primary election in light of the COVID-19 outbreak. Plaintiffs Coalition for Good Governance, Rhonda Martin, Jeanne Dufort, Aileen Nakamura, Joy Wasson, and Elizabeth Throop filed this case against Defendants Brad Raffensperger in his official capacity as Secretary of State, along with Rebecca Sullivan, David Worley, Matthew Mashburn, and Ahn Le in their official capacities as members of the Georgia State Election Board.

Plaintiffs seek postponement of the election until June 30, along with myriad other changes to the voting process. Specifically, Plaintiffs seek an order requiring polling locations to use paper ballots rather than the new touchscreen ballot marking device ("BMD") component of the State's new Dominion Voting System.[1] Plaintiffs contend that the touchscreens are not suitable for use during the COVID-19 outbreak

---

[1] The BMD is the subject of another lawsuit in this Court. *See Curling v. Raffensperger*, No. 1:17-cv-2989-AT (N.D. Ga. filed Aug. 8, 2017).

because the virus can survive for two to three days on plastic and on stainless steel, and cleaning a BMD screen requires powering it down, disinfecting it with special chemicals, drying, and rebooting, which would need to occur after each use.

Plaintiffs also allege various problems with absentee voting that would render it an unacceptable alternative to in-person voting. Specifically, they argue that the lack of secrecy envelopes in some absentee ballots violates the right to a secret ballot. They also allege that the unreliability and delays in the United States Postal Service lead to a likelihood that absentee ballots will not be as effective as in-person votes.

Plaintiffs request various forms of relief related to absentee voting. Specifically, they seek an extended deadline for receipt of the ballots; facilitated distribution and acceptance; speed processing (requiring the Secretary to allow superintendents to process and prepare mail ballots beginning the Monday before Election Day, and for tabulation not before the close of the polls); counted non-duplicated March ballots; a corrected My Voter webpage about when the ballots

were issued; mailed ballots to corrected addresses; information and instruction sheets and secrecy inner envelopes; letters with instructions and date/deadline information mailed to voters who have previously been mailed a ballot that has not yet been completed and received, along with secrecy inner envelopes and instructions for ballot packets; a statewide press release explaining the election date; instructions for completing and timely delivering completed ballots; and instructions for using secrecy envelopes.

In addition, Plaintiffs seek various forms of relief regarding in-person voting such as adjusting the number of voting stations, expanding early voting, implementing curbside voting and temporary mobile voting centers, streamlining voter check-in, offering state-provided personal protective equipment ("PPE"), and increasing physical distancing.

Plaintiffs have moved [11, 20, 27] for a temporary restraining order or preliminary injunction granting them the relief they seek. Defendants have moved [32] to dismiss Plaintiffs' claims. On May 14, after notifying the parties that they should be prepared to discuss all

grounds raised in Defendants' motion to dismiss, the Court held a hearing on the parties' motions.

## II. Legal Standards

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

5

> "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### B.     Preliminary Injunction

To obtain a preliminary injunction, Plaintiffs must demonstrate that (1) their claims have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm in the absence of an injunction; (3) the harm they will suffer in the absence of an injunction would exceed the harm suffered by Defendants if the injunction is issued; and (4) an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002). The likelihood of success on the merits is generally considered the most important of the four factors. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

### III.   Discussion

The Court assumes, without deciding, that Plaintiffs have standing. Nonetheless, their claims will be dismissed because they present a nonjusticiable political question.

"A federal court has no authority to review a political question." *McMahon v. Pres. Airways, Inc.*, 502 F.3d 1331, 1357 (11th Cir. 2007) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803)). "The

political question doctrine protects the separation of powers and prevents federal courts from overstepping their constitutionally defined role." *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 210 (1962)). A case may be dismissed on political question grounds if it would require the Court to decide a question with one of the following characteristics:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 1357–58 (quoting *Baker*, 369 U.S. at 217).

Here, at least two of the characteristics are present: (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department, and (2) a lack of judicially discoverable and manageable standards for resolving it.

It is especially important during crises such as the present one involving a medical pandemic that the Court hew closely to the

8

Constitution's original imperatives. This starts with the Elections Clause, which commits the administration of elections to Congress and state legislatures—not courts. The Framers of the Constitution did not envision a primary role for the courts in managing elections, but instead reserved election management to the legislatures. Absent pellucid proof provided by plaintiffs that a political question is not at issue, courts should not substitute their own judgments for state election codes. No such proof has been adduced here.

Moreover, Plaintiffs acknowledge that executive-branch officials at all levels have undertaken measures to slow the spread of the coronavirus. And obviously, Plaintiffs are unsatisfied with those efforts. But whether the executive branch has done enough is a classic political question involving policy choices. Thus, it is not properly before the Court.

Even if the Court could address the question, answering it with any degree of certainty would be impossible, as there are no judicially discoverable and manageable standards for resolving it. This is why courts should not second-guess coordinate branches of government on

matters explicitly committed to them. In this sense, this case is much like *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), in which the Supreme Court rejected efforts to have federal courts articulate the definition of "fairness" and "how much is too much" in the context of partisan gerrymandering.

In a recent Eleventh Circuit case, Judge William Pryor noted that a nonjusticiable political question should preclude jurisdiction where "[t]here are no discernable and manageable standards 'to answer the determinative question': How much partisan advantage from ballot order is too much?" *Jacobson v. Fla. Sec'y of State*, No. 19-14552, 2020 WL 2049076, at *18 (11th Cir. Apr. 29, 2020) (William Pryor, J., concurring) (quoting *Rucho*, 139 S. Ct. at 2501). Similarly here, there are no discernable and manageable standards to decide issues such as how early is too early to hold the election or how many safety measures are enough.[2]

---

[2] The real problem here is COVID-19, which all but the craziest conspiracy theorists would concede is not the result of any act or failure to act by the Government. And that fact is important when weighing the Defendants' management of the election. Specifically, this is not a case in which the state applied its own policy, adopted a rule, or enacted a statute that burdened the right to vote. In other words, this is not *Burdick v. Takushi*, 504 U.S. 428 (1992), or

Ultimately, ordering Defendants to adopt Plaintiffs' laundry list of so-called "Pandemic Voting Safety Measures" would require the Court to micromanage the State's election process. The relief Plaintiffs seek bears little resemblance to the type of relief plaintiffs typically seek in election cases aimed to redress state wrongs.

Because Plaintiffs' claims present a nonjusticiable political question, Defendants' motion to dismiss will be granted.[3]

## IV. Conclusion

For the foregoing reasons, Defendants' motion [32] to dismiss is granted. Plaintiffs' motions [11, 20, 27] for a preliminary injunction or

---

*Anderson v. Celebrezze*, 460 U.S. 780 (1983). The former involved an Ohio statute that imposed an early filing deadline for independent candidates; the latter involved Hawaii's state-imposed policy against write-in voting. Here, the underlying burden on the right to vote emanates from a virus, which obviously was not created or imposed by Defendants. While Plaintiffs contend that Defendants have done a poor job of responding to that virus, the fact that the virus's provenance was not through Defendants further increases, in this Court's opinion, the impropriety of judicial intervention. All of the election cases cited by Plaintiffs in which injunctive relief was granted involved a burden on the right to vote that was created by the Government. Not so here.

[3] Even if the Court were not inclined to dismiss Plaintiffs' claims, it would not grant the injunctive relief Plaintiffs request. Because of the lack of judicially discoverable and manageable standards discussed above, Plaintiffs have not carried their burden of showing that they are likely to succeed on the merits.

temporary restraining order are denied. The Clerk is directed to close this case.

      IT IS SO ORDERED this 14th day of May, 2020.

                                                                            _____
                                          Timothy C. Batten, Sr.
                                          United States District Judge