IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COALITION FOR GOOD GOVERNANCE; RHONDA J. MARTIN; JEANNE DUFORT; AILEEN NAKAMURA; B. JOY WASSON; and ELIZABETH THROOP,<br><br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State of the State of Georgia; REBECCA N. SULLIVAN, DAVID J. WORLEY, MATTHEW MASHBURN and AHN LE, in their official capacities as members of the Georgia State Election Board,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:20-cv-1677-TCB |

# **O R D E R**

## I. Background

This case comes before the Court on Plaintiffs' motion [48] to alter or amend the Court's May 14 judgment.

## II. Legal Standard

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file a "motion to alter or amend a judgment" after the entry of the judgment, and Local Rule 7.2 permits motions for reconsideration in limited circumstances. However, "[c]ourts may grant relief under Rule 59(e) or Local Rule 7.2E only if the moving party clears a high hurdle." *Chesnut v. Ethan Allen Retail, Inc.*, 17 F. Supp. 3d 1367, 1370 (N.D. Ga. 2014). "[T]he only grounds for relief under Rule 59(e) are the discovery of new evidence or the existence of a manifest error of law or fact." *Id.* (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)).

## III. Discussion

In its order [43] dismissing this action, the Court concluded that Plaintiffs' claims present a nonjusticiable political question based on (1) a textually demonstrable constitutional commitment of the issue to a

2

coordinate political department, and (2) a lack of judicially discoverable and manageable standards for resolving it. Plaintiffs contend that the Court's order constitutes a manifest error of law on both grounds. Pretermitting the first issue, Plaintiffs' challenge fails because they have provided the Court with nothing to change its earlier conclusion that no judicially discoverable and manageable standards exist for resolving their claims.

As the Court pointed out in its May 14 order, this case is much like *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), in which the Supreme Court rejected efforts to have federal courts articulate the definition of "fairness" and "how much is too much" in the context of partisan gerrymandering. *See also Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1218 (11th Cir. 2020) (noting that a nonjusticiable political question should preclude jurisdiction where "[t]here are no discernable and manageable standards 'to answer the determinative question': How much partisan advantage from ballot order is too much?") (William Pryor, J., concurring) (quoting *Rucho*, 139 S. Ct. at 2501). Similarly here, there are no discernable and manageable standards to decide

issues such as how early is too early to hold the election or how many safety measures are enough.

In their motion Plaintiffs argue that they "have identified a manageable and well-established judicial standard that must be applied—namely, the balancing test (weighing burdens against state interests) that the Supreme Court has developed for voting rights cases . . . ." [48] at 13–14[1] (citing *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008); *Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983)).[2] They contend that this case is justiciable (and distinct from *Jacobson*)[3] because they

> have explicitly and plausibly alleged that the Defendants' conduct will burden Plaintiffs' fundamental right to vote by forcing Plaintiffs to accept exposure to risks of contracting a fatal illness as the price of voting in person and, in the alternative, will cause Plaintiffs to suffer a substantial risk

---

[1] Pagination refers to numbers as listed in the document, not the CM/ECF pagination.

[2] Plaintiffs contend in their motion to alter or amend that the Court found that *Anderson* and *Burdick* do not apply because the alleged harms result from the virus, not actions of the state. Although the Court distinguished those cases from this one on that basis, the Court's holding does not rest on that distinction.

[3] Plaintiffs quote Judge William Pryor's concurrence in *Jacobson* to support their view. However, the quote to which they point deals with burden, not justiciability.

4

of casting a less effective vote if they choose instead to vote
absentee.

*Id.* at 21. And they argue that they have alleged "specific details of additional burdens that require the application of the *Anderson*, *Burdick*, and *Crawford* framework."[4] *Id.*

The problem for Plaintiffs is not whether the balancing test set forth by the Supreme Court exists or would apply if Plaintiffs can show a constitutional violation. The problem is the utter absence of judicially manageable standards to determine the existence or extent of a violation and the appropriate remedy therefor. How early is too early for the election to be held in light of COVID-19? How many safeguards must be in place to protect those who choose to vote in person from the possibility of contracting COVID-19? What are those safeguards, and when is the implementation of an additional safeguard no longer necessary? Have Defendants already implemented enough safeguards

---

[4] Plaintiffs contend that they only request that the Court apply the standard set forth in *Anderson*, *Burdick*, and *Crawford*, and that the Court can choose how it wishes to craft the appropriate relief. However, as detailed in the Court's earlier order, Plaintiffs' complaint seeks specific relief that would require the Court to oversee myriad details pertaining to the election.

to avoid a constitutional violation? Plaintiffs have provided the Court with no non-speculative way to answer these questions, and *Burdick* and *Anderson* do not either. Based on *Rucho* and *Jacobson*, there simply are no judicially discoverable and manageable standards to implement the relief Plaintiffs seek. Essentially, Plaintiffs argue that because courts have applied balancing tests to specific election regulations in past cases, judicially manageable standards *must* exist in this case. That is wrong.

     Plaintiffs argue that several cases demonstrate that their claims are justiciable. They cite to *Republican National Committee v. Democratic National Committee*, 140 S. Ct. 1205 (2020) (per curiam) (staying the district court's order regarding a challenge to absentee ballot deadlines but not expressing concerns about justiciability); *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251 (N.D. Ga. 2019) (adjudicating challenges to registered voters list-maintenance policy, signature match policy, and administration of precincts and polling places); *Curling v. Raffensperger*, 397 F. Supp. 3d 1334 (N.D. Ga. 2019) (involving the Secretary's alleged failures to secure the

State's old DRE election machines against malicious attacks); *Georgia Coalition for Peoples' Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251 (N.D. Ga. 2018) (adjudicating challenge to errors in maintenance of voter registration list); *Martin v. Kemp*, 341 F. Supp. 3d 1326 (N.D. Ga. 2018) (adjudicating challenge to processing of absentee ballots).

These cases, however, are distinguishable in two ways: (1) they did not address the political question doctrine or judicially discoverable and manageable standards; and (2) the relief sought was far less extensive and detailed than the relief Plaintiffs seek here.

Plaintiffs are dismissive of the fact that the cases they cite did not address the political question issue. This Court is not. Plaintiffs reference no case that articulates the standards for measuring Defendants' actions. Indeed, Plaintiffs themselves have not attempted to define any proposed standards. Therefore, the basis upon which they contend that Defendants' actions are unsatisfactory whereas their proposals are not is indeterminate. Why a June 30 election is constitutional but a June 9 election is not is anyone's guess.

Moreover, many of the cases Plaintiffs cite involved a single, discrete election practice, and none involved a request for *more than two dozen* forms of proposed mandatory injunctive relief. In essence, Plaintiffs are asking this Court to order a wholesale overhaul of Georgia's current election, and this Court is unwilling to do that. *See Curling v. Sec'y of State of Georgia*, 761 F. App'x 927, 934 (11th Cir. 2019) (per curiam) (distinguishing between simple injunctive relief and relief "directing the precise way in which Georgia should conduct voting" for purposes of 11th Amendment immunity).[5]

Finally, the Court's conclusion is bolstered by the fact that Plaintiffs seek extensive relief on the eve of/during an election. As the Supreme Court recently held, "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm.*, 140 S. Ct. at 1206. The combination of the extensive nature of

---

[5] Plaintiffs seek far more dramatic relief than that sought in the Wisconsin election/*RNC* case. Here, Plaintiffs seek an order that no less than postpones the date of the election; mandates an entirely different method of in-person voting; mandates counties to set up everything from drive-thru voting to "pop-up" precincts; and declares at least three state statutes unconstitutional.

the relief Plaintiffs seek and the temporal proximity to the election is a further reason to deny them relief.

Ultimately, the Plaintiffs have given no reason for the Court to alter its earlier ruling. Their motion will be denied.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion [48] to alter or amend the Court's judgment is denied.

IT IS SO ORDERED this 26th day of May, 2020.

_____
Timothy C. Batten, Sr.
United States District Judge